UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RAUL RANGEL,

          Plaintiff,

   v.

KILOLO KIJAKAZI, acting
Commissioner of Social Security,

          Defendant.

No. 1:21-cv-00470-GSA

**ORDER DIRECTING ENTRY OF
JUDGMENT IN FAVOR OF PLAINTIFF
RAUL RANGEL AND AGAINST
DEFENDANT COMMISSIONER OF
SOCIAL SECURITY**

**(Doc. 21, 23)**

I.     **Introduction**

Plaintiff Raul Rangel ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 21, 23.  After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision.

II.     **Factual and Procedural Background[2]**

On December 17, 2016 Plaintiff applied for disability insurance benefits alleging a disability onset date of January 18, 2016.  The Commissioner denied the application initially on May 1, 2017 and on reconsideration on July 6, 2017.  AR 132, 137.  Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on May 21, 2019.  AR 58–96.  On July 29, 2019 the ALJ issued a partially favorable decision, which was amended on September 27, 2019 to correct the disability onset date.  AR 35–56; 30-34.  The Appeals Council denied review

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 11 and 24.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

on August 20, 2020.  AR 5–10.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-

(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date (AOD) of January 18, 2016.  AR 41.  At step two the ALJ found that Plaintiff had the following severe impairments since his AOD of January 18, 2016: degenerative disc disease of the lumbar spine with radiculopathy; osteoarthritis and degenerative joint disease of the bilateral knees; osteoarthritis of the bilateral ankles; claudication; obesity.  AR 42.  The ALJ also determined at step two that Plaintiff had the following additional severe impairments as of August 28, 2018[3], the established disability onset date (EOD): disorder of the left hand/ruptured tendon.  AR 42.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 42.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that prior to the EOD of August 28, 2018, Plaintiff had the RFC to perform sedentary work with frequent handling and fingering bilaterally.  AR 42–49.  The ALJ determined that as of his EOD of August 28, 2018 Plaintiff had the same RFC but with left-sided handling and fingering

---

[3] The ALJ issued a revised decision clarifying the EOD as August 28, *2018*, not 2019.  AR 33-34.

reduced to occasional.  AR 49–53.

At step four the ALJ concluded that since the AOD of January 28, 2016, Plaintiff could not perform his past relevant work as an auto body repairmen or landscape technician (performed at heavy to very heavy exertional level).  AR 53.   At step five the ALJ concluded that prior to the EOD of August 28, 2019 (but not thereafter), there were jobs existing in significant numbers in the national economy that Plaintiff could perform: ticket counter, table worker, lens inserter.  AR 55.

Accordingly, the ALJ concluded that Plaintiff was not disabled prior to the EOD of August 28, <u>2018</u> but became disabled on that date.  AR 34, 55.

**V.    Issues Presented**

Plaintiff asserts one claim of error: 1) that the ALJ erred in according inadequate weight to the opinion of his treating physician Dr. Bayardo.

**A.    Applicable Law**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins*, 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the

facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence.  20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons.  *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization.  20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### B. <u>Analysis</u>

Dr. Bayardo completed an RFC questionnaire dated March 19, 2019.  AR 962–65.  He diagnosed back pain, ankle DJD (degenerative joint disease), and hand pain. AR 962. Dr. Bayardo opined that Plaintiff could walk less than one city block, sit and stand 30 minutes consecutively,

could sit and stand/walk less than 2 total hours each in an 8-hour day, required at will position changes, needed to walk around every 45 minutes, required 30 minute unscheduled breaks every 30 minutes,  required leg elevation 80-90% of the workday, needed a cane to walk, could rarely lift/carry less than 10 pounds and never more than 10, could handle finger and reach 10% of a workday, was incapable of low stress work, and would miss more than four workdays per month. *Id.* Dr. Bayardo opined the limitations would apply as early as January of 2016.  AR 965.

The ALJ addressed the opinion as follows:

> I have assigned weight to the opinion of Dr. Bayardo, to the extent that it is consistent with the residual functional capacity statement that is adopted herein. Dr. Bayard in an advocate for the claimant and is not familiar with social security disability rules and regulations. I must consider whether the physical signs and clinical findings support the severity of pain and other symptoms alleged. The very restrictive functional limits are not supported by the physical examinations of the claimant, but do support the claimant was reduced to a narrow range of sedentary work and ultimately sedentary work that had significant bilateral hand restrictions that would eliminate sedentary work.

AR 53.

Plaintiff argues: 1) that the ALJ failed to discuss and weigh the regulatory factors such as nature and length of the treatment relationship;[4] 2) that the finding regarding lack of supporting physical examinations is too broad a generalization and is contradicted by the record; 3) that the ALJ failed to discuss the opinion or assign it any weight in her analysis of the opinion evidence for the period prior to the EOD; and 4) that this was especially problematic because the ALJ did in fact adopt many of Dr. Bayardo's opined limitations, and indeed gave it the greatest weight, just not for the entire period at issue and didn't explain why not.  Br. at 12-15, Doc. 21.

---

[4] No controlling authority requires the ALJ to recite each regulatory factor.  Further, the ALJ did not overlook the nature and extent of the treatment relationship.  The ALJ introduced Dr. Bayardo and identified him by name as the provider at Plaintiff's appointments starting December 22, 2015, and at each appointment thereafter. *See, e.g.* AR 45 ("The claimant initially sought treatment with Carlos Bayardo, M.D., on December 22, 2015 for morning stiffness of joints, knee, and ankle pain and a refill of his medications.").  Further, the ALJ did discuss supportability finding Dr. Bayardo's opinion unsupported by the physical examinations, examinations which were described earlier in the decision.

6

1    Defendant responds that: 1) it is important to note that the ALJ included significant

2  limitations even beyond sedentary (that he must be able to rest for 15 minutes every 2 hours and

3  elevate his legs,[5] not work around unprotected heights, nor dangerous moving machinery, nor

4  exposure to extreme cold, vibrations and humidity; 2) that the ALJ properly found Dr. Bayardo's

5  opinion unsupported by examination findings and cited the same; 3) that the ALJ's rejection of the

6  opinion was further supported by the opinions of the non-examining state agency medical

7  consultants and "the Ninth Circuit has repeatedly held that reviewing physicians are highly

8  qualified experts whose opinions may provide a substantial basis for an ALJ's conclusions;"[6] and,

9  4) the ALJ's decision was supported by the examination and opinion of the consultative examiner,

10  Dr. Hazrati.  Resp. at 8–12, Doc. 23.

11    Plaintiff's contention the ALJ had no apparent reason for adopting Dr. Bayardo's opinion

12  for only part of the relevant period, not the entire period, is not entirely responsive.    What the ALJ

13  did was reduce left handed manipulation from frequent to occasional as of August 28, 2018.  This

14  was not an arbitrary choice given Plaintiff presented to the ER with left wrist pain and swelling in

---

[5]    The rest breaks and periods of leg elevation were not limitations; the ALJ specifically noted they would fall within normal breaks and lunch.
[6]    Respectfully, the quoted statement here does not reflect any Ninth Circuit holding.  What the Ninth Circuit has stated is that non-examining state agency medical consultants' findings may constitute substantial evidence *when supported by* independent clinical findings or other evidence.  *See Saelee*, 94 F.3d at 522; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).
     But independent clinical findings can stand alone as substantial evidence (*See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)), whereas state agency consultants' findings cannot.   Describing them as "medical opinions" is also imprecise.  They are in fact "prior administrative findings."  *See* POMS DI 24503.005 (Categories of Evidence).  Those prior administrative findings are owed no deference by the ALJ.  The Social Security Act provides for a de novo hearing before an ALJ "based on evidence adduced at the hearing."  See 42 U.S.C. § 405(b); SSR 83-46c ("the Social Security Act provides each claimant with a right to a de novo hearing."); SSR 77-4 ("The claimant's right to a de novo hearing, if he wishes one, is made clear by the reference in section 205(b) to the claimant's right to a decision based on evidence 'adduced at the hearing.'").
     The evidence adduced at the hearing is often significant.  Claimants routinely wait long periods between the agency's reconsideration determination and the ALJ hearing during which time many Claimants continue pursuing care and generating sometimes extensive additional evidence.  The ALJ's interpretation thereof is often central to the issues on appeal.  To say that an ALJ's decision is supported by the state agency consultants' findings is a truism; it is unavoidably true or the case would not have proceeded to the ALJ hearing level.   The fact however that the claimants' application was denied initially and upon reconsideration does not support denying it again at the ALJ hearing level.  That would be the antithesis of *de novo* review. As the Ninth Circuit has stated, de novo review "considers the matter anew, as if no decision had been rendered."  *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

7

August 2018, and ultimately presented with inability to flex his left index finger on August 28, 2018.  As reflected in the VE's testimony (AR 93) it was the combination of sedentary exertional capacity, unskilled occupational base, and restriction to occasional handling and fingering that resulted in the disability finding as of August 28, 2018 (given the importance of hand dexterity for unskilled sedentary work, SSR 83-10).

Whether additional restrictions were warranted to the pre-EOD RFC based on Dr. Bayardo's opinion, however, is another matter.  As for the ALJ's observation that Dr. Bayardo is "an advocate for the claimant," this turns the treating physician rule on its head.  The former regulations applicable to this claim state:

> Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2)

Thus, the unique perspective of a treating physician was a reason to give comparatively more weight under the prior regulations.  The ALJ here appears to somewhat oppose that principle suggesting that the opinion should be questioned precisely *because* Dr. Bayardo is a treating physician and therefore an advocate for the claimant whose opinion may be biased.

As to the ALJ's finding that the opinion was unsupported by the physical exams, the ALJ did not describe, even in broad terms, what those unsupportive physical exams showed which purportedly undermined the opinion. Nor did the ALJ cite a sampling thereof (e.g. "physical exams which generally showed normal strength, range, gait . . .  *See e.g.,* Ex. BF/2 . . . .").

Various Ninth Circuit precedent suggests that the ALJ's decision-writing formula here does not rise to the level of the "specific and legitimate" reasoning standard applicable to claims governed by the treating physician rule (pre- March 27, 2017 regulatory revisions).  *See, e.g.,*

*Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."[7]).

However, other precedent suggests the district court has some latitude in drawing inferences from one portion of an ALJ's opinion and applying it elsewhere. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion . . . if those inferences are to be drawn.). Unfortunately here, given that the ALJ did not specifically address how the physical exams did not support Dr. Bayardo's opinion, the medical evidence described by the ALJ will have to be reasonably self-evident to support for the ALJ's conclusion.

The pre-EOD exams included the following:

- December 22, 2015: normal ROM and normal strength. Dx w/ankle sprain.
- January 11, 2016 ER visit: no acute distress, normal range and normal strength, left knee was swollen and tender. Imaging done the same day of lumbar spine, knees, ankles, describe mild to moderate abnormalities.
- January 19, 2016: normal range and strength.
- February 16, 2016: same
- March 29, 2016: same
- May 12, 2016: same
- May 26, 2016: same
- May 26, 2016 (different provider): no physical exam documented
- June 23, 2016: no physical exam documented
- July 7, 2016: same
- July 21, 2016: same
- August 23, 2016: same
- September 22, 2016 through February 16, 2017 Adventist Healthcare: no physical exams documented
- March 29, 2017 consultative examination: walked to exam room using cane and limping on right foot; got on and off exam table easily; cystic lesion on left hand painful to touch; bilateral pitting edema on the foot to mid lower leg; normal ambulation without cane; normal range in all major joints; negative straight leg

---

[7] A proposition one could argue applies with even greater force here where the objective regulatory factors were *not* listed seriatim.

raise; normal sensory exam; normal deep tendon reflexes;  normal muscle bulk
and tone.
- April 13, 2017: normal range and strength
- May 11, 2017: same
- May 26, 2017: normal x-rays of bilateral knees; moderate abnormalities on x-rays of bilateral feet.
- March 6, 2018: no physical examination documented
- April 17, 2018: normal range and strength
- May 8, 2018: reported bending injury of low back; decreased range of motion, tenderness over right buttock, positive straight leg raise (SLR); normal range and strength elsewhere in his musculoskeletal system
- May 29, 2018: reported twisting injury of low back; on examination: severe pain over lumbar area radiating to right leg; diminished sensation of right leg; diminished deep tendon reflexes on right side over L4-5 and S1.
- June 28, 2018: no examination findings documented; reported continued back pain
- July 28, 2018: same
- August 8, 2018: ER visit; tenderness and swelling of left wrist with normal range of motion and no deformity.

AR 45-48.

During the two and a half year period between December 22, 2015 and August 8, 2018, Plaintiff exhibited abnormalities upon physical examination at 5 out of 25 visits: 1) 1/11/16 (swollen, tender knee); 2) 3/29/17 (left hand cystic lesion, leg pitting edema);[8] 3) 5/8/18 (poor ROM, tender buttock; positive straight leg raise); 4) 5/29/18 (severe radicular pain, diminished sensation and reflexes); 5) 8/18/18 (tender, swollen left wrist).  Diagnostic imaging of these joints also revealed mild to moderate abnormalities during that time as noted.

Plaintiff cites 9 records in support of his contention that "there are multiple physical examinations in the record that contradict the ALJ's boilerplate assertion here".  Br. at 14, Doc. 21 (citing AR 319, 865, 871, 877, 893, 908, 933, 972, 992).

Many of Plaintiff's cited examples however post-date the EOD.  *See* AR 865 (11/1/18 note re left index finger flexion due to flexor tendon rupture); AR 865 (10/2/18 note re: same); AR 877

---

[8]  At which he also was noted to limp with a cane, but walk normally without one,

(8/28/18 note re: same).  Insofar as the ALJ assessed an ultimately disabling RFC for the period following the EOD, the ALJ's generalization that Dr. Bayardo's opinion was unsupported by the physical examinations should only be understood to apply to the pre-EOD physical examinations. Additionally, even if the ALJ did not make that distinction clear (or did not have that distinction in mind), any unsupported generalization about the post-EOD physical examinations would be harmless error because Plaintiff was in fact found disabled during that period.

Of the physical examinations Plaintiff cites from the pre-EOD period, they were either duplicative of examinations the ALJ did cite, or reflect the same findings such as back pain, knee swelling, foot edema.  AR 319 (January 11, 2016 emergency department visit reflecting knee pain and swelling upon musculoskeletal examination); AR 893 (5/29/18 visit for severe radicular back pain noting diminished sensation and diminished deep tendon reflexes); AR 908 (2/8/18 visit for back pain, knee pain, claudication); AR 933 (9/7/17 progress note reflecting examination findings of lumbar pain, bilateral foot deformity and edema); AR 992 (5/8/18 emergency department visit for bending injury to low back and severe radicular pain on right side).

Isolated examination findings of tenderness and swelling in various mild to moderately arthritic joints do not establish, or strongly support the notion that Plaintiff was consistently more limited than the reduced range of sedentary exertional work assessed in the RFC (sit 6 of 8 hours, stand/walk 2 of 8, never lift more than 10 pounds, frequent handling and fingering).

On the other hand, the ALJ's summary of the medical evidence does not entirely speak for itself in a few important respects.  For example, Dr. Bayardo opined that Plaintiff would have to change positions from sitting and standing at will and walk around every 45 minutes.  Despite identifying no comparably extreme restriction, the consultative examiner Dr. Hazrati on March 29, 2017, did document pitting edema in both lower legs as set forth above.  Plaintiff similarly maintained that he could not sit for extended periods due to water retention and the need to elevate

his legs 4 to 6 times daily for up to 30 minutes.  AR 44.  Consistently normal strength, range and gait do not tend to refute the existence of leg edema with prolonged sitting.  The ALJ's RFC for a reduced range of sedentary work does appear to account for many of Plaintiff's myriad joint pains and exertional intolerance.  Even for individuals who cannot tolerate exertion, extended sitting often presents its own problems as is the case with leg edema.

Further, the ALJ's "accommodation" regarding 10-15 minute rest periods for leg election was in fact to be accommodated by normal breaks during which any employee would presumably be free to elevate their legs or spend the time however they wished.  Thus, this was not a unique accommodation for Plaintiff's leg edema, does not accommodate his stated intolerance for prolonged sitting, his need for 4-6 periods of leg elevation up to 30 minutes, or Dr. Bayardo's opinion that he required a sit/stand option and the ability to walk around every 45 minutes.[9]

The two examinations in May 2018 for acute bending/twisting injury to the lumbar spine (AR 893, 992) are two additional physical examinations where the ALJ's citation to (and description of) the same does not speak for itself or support the generalization about the lack of physical examinations commensurate with Dr. Bayardo's opinion.  Up until May 2018, Plaintiff had routinely presented with seemingly benign chronic back pain as the ALJ described (AR 45-48), but had not presented with severe radicular pain, restricted lumbar spine ROM, positive straight leg raise, decreased sensation in the L4-5 and S1 dermatome, and decreased deep tendon reflexes in the same distribution, all of which Plaintiff presented with in May 2018 following a bending/twisting injury.  AR 893, 992.

Plaintiff followed up again in June and in July still reporting radicular back pain.  The ALJ

---

[9] Granted, Dr. Bayardo also opined Plaintiff needed to elevate his legs 80-90% of an 8-hour day, which admittedly is grossly disproportionate even to Plaintiff's self-described leg elevation practices of 4-6 times a day for 30 minutes. Nevertheless, the fact that the opinion was extreme and unsupported in some respects (or even most respects) does not justify rejecting other more justifiable restrictions without explanation such as a sit stand option, particularly where leg edema was also confirmed at the consultative examination.

notes that no physical examination was documented.  AR 48.  However, it is not clear what examination findings the ALJ would have expected to see at the third and fourth consecutive visits, weeks apart, for the same radicular back pain that started in May following a bending/twisting injury as pointed out above.  Plaintiff continued reporting the same symptoms.  It would seem reasonable to forgo additional pain provocation testing (straight leg raise) and painful range of motion testing at follow up visits as Dr. Bayardo had already documented extensive findings indicative of nerve root impingement.  Dr. Bayardo made medication adjustments accordingly and referred for an MRI.  It was noted however that Plaintiff "lost MRI appointment" though it is not clear why.

Plaintiff ultimately presented to the emergency department on April 23, 2019 after he fell backward on his buttocks at home three days prior.  A CT scan was obtained which showed bulging discs at multiple levels causing severe central canal stenosis and moderate foraminal stenosis.  AR 972.

These are the types of issues the ALJ ought to have addressed in the first instance and articulated a reasoned conclusion.  This shortcoming is critical here as the records are far from self-evidently benign, even for the pre-EOD period.

Finally, the ALJ's rejection of Dr. Bayardo's opinion because he is "an advocate for the claimant" suggests the opinion was rejected for a patently improper reason--that statement turns the treating physician rule on its head.

### VI.    Remand for Further Proceedings

Remand is appropriate for the ALJ to give more specific consideration to the physical examination abnormalities noted for the pre-EOD period and consider in what respect those abnormalities do or do not support Dr. Bayardo's opinion.  *See Benecke v. Barnhart*, 379 F.3d 587,

595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### VII.    Conclusion and Order

The Court finds that substantial evidence and applicable law do not support the ALJ's conclusion.  Accordingly, it is ordered that the Commissioner's decision is reversed, and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The Clerk of Court is directed to enter judgment in favor of Plaintiff Raul Rangel and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **October 13, 2023**                    **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE